

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/23/2019

| | | |
|---|---|---|
| IN RE: § | | |
| CHRISTOPHER D. FEDORUK; fdba § | CASE NO: 18-33447 | |
| ONERUK, INC; dba GUERISON § | | |
| INTERESTS, LLLP; fdba SOINS, LLC; dba § | | |
| FEDORUK MANAGEMENT, LLC; dba § | | |
| THE EMERGENCY ROOM AT KATY § | | |
| MAIN STREET; fdba D'URGENCE, PLLC, § | | |
| et al § | | |
| Debtor § | CHAPTER 7 | |

# MEMORANDUM OPINION
*Resolving ECF No. 42*

### I.   INTRODUCTION

Contrary to what counsel for Katy ER would have this Court believe, this is not a case in which Debtors' are "living it up like the Kardashians."[1] On September 27, 2018, Ethan Brown; Guerison Interests, LLLP; EC Squared, PLLC; Oneruk, Inc.; and Oneruk, Inc. 401K Profit Sharing Plan (collectively "*Katy ER*") filed the instant "Amended Motion to Dismiss Chapter 7 Case Under 11 U.S.C. § 707(a), or in the Alternative, Motion for Abstention Pursuant to 11 U.S.C. § 305" (the "*Motion to Dismiss*").[2] On October 12, 2018, Christopher Fedoruk ("*Dr. Fedoruk*") and Tamara Fedoruk ("*Mrs. Fedoruk*," collectively "*Debtors*") filed their response to the Motion to Dismiss.[3] The Court conducted an evidentiary hearing on the Motion to Dismiss over a series of four days. In consideration of the arguments presented in the hearings on this matter, all other evidence in the record, credibility of the witnesses, and relevant case law the Court declines Katy ER's invitation to grant its Motion to Dismiss or Alternatively its Motion to

---
[1] Min. Entry 3/27/2019.
[2] ECF No. 42.
[3] ECF No. 50.

Abstain.

## II.    FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

### A. Background History

On June 27, 2018, Debtors filed a petition[4] under title 11, chapter 7 of the United States Bankruptcy Code.[5] Debtors timely filed their initial schedules, statements and paid the filing fee in full at the time of filing. Debtors indicated that their debts are primarily business debts by checking the appropriate box in their petition, and therefore, Debtors were exempted from completing Official Form 122-A (the "*Means Test*").[6] Dr. Fedoruk is an emergency-room physician with a reported an annual income of $602,966.77 for the year of 2017, but at the time of filing, had earned a year-to-date income of $282,924.23 for the year of 2018.[7] Mrs. Fedoruk does not work outside the home with the exception of substituting as a school nurse at the children's school on an as needed basis, which translates to approximately $400 a year.[8]

In 2012, Dr. Fedoruk and Dr. Ethan Brown, also an emergency room physician, embarked on a business venture to open and operate a free-standing emergency room center in

---

[4] ECF No.1.
[5] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.
[6] ECF No. 1, Pg. 7.
[7] ECF No. 41, Pg. 3.
[8] *Id.*

Katy, Texas.  Several entities were created for the purpose of starting the business: Guerison Interests, LLLP; Oneruk, Inc.; Oneruk, Inc. 401K Profit Sharing Plan; EC Squared, PLLC; and D'Urgence, PLLC.  In order to fund this venture, both doctors invested a substantial sum of money and took out Small Business Administration loans for which the doctors and their wives were required to sign on as personal guarantors.  In addition to the initial capital investment and loans, the doctors executed a lease for the property where Katy ER would be located and entered into contracts for medical equipment and all the necessities to operate a free-standing emergency room center.

In 2013, however, Dr. Fedoruk filed a lawsuit in Harris County styled as Cause no. 2013-67081; Christopher Fedoruk, Tamara Fedoruk, and D'Urgence, PLLC v. Ethan Brown, Guerison Interests, LLLP, EC Squared, PLLC, Oneruk, Inc. and Oneruk, Inc. 401 K profit Sharing Plan; In the 164th Judicial District Court of Harris County Texas, (the "*State Court Case*").  Most of Dr. Fedoruk's claims were dismissed at the summary judgement phase of the proceeding and the remainder dismissed by the Court on a motion by the Defendants for directed verdict.  On March 29, 2018, the Fedoruks and Katy ER entered into a Rule 11 Agreement setting forth the terms of a settlement to fully and finally resolve Katy ER's claims against the Fedoruks (the "*Agreement*").

The terms of the Agreement called for Debtors to pay Dr. Brown and Katy ER a lump sum of $360,000 on or before June 27, 2018, and that all rights and ownership interests Dr. Fedoruk had in any of the Katy ER entities were relinquished effective July 18, 2013.  Additionally, the Agreement contained a conditional entry of Agreed Judgment in the amount of $650,000 should the Fedoruks fail to deliver payment by June 27, 2018.  Debtors did not pay any sums due under this Agreement but instead filed for bankruptcy protection.

**B. Debtors' Income & Expenses**

Dr. Fedoruk's monthly average income is $47,091.14, derived exclusively from MCEP in Bellaire, Texas, where he has been employed as an emergency room physician for the last ten years; plus he receives an average monthly bonus in the amount of $1,236.99 from RVU for a total combined gross monthly income of $48,328.14.[9] Deducted from Dr. Fedoruk's monthly pay are the following:

- taxes, Medicare, and social security: $11,704.28;
- voluntary contributions to retirement plans: $2,355.46;
- insurance: $2,168.86;
- life insurance: $25.10; and
- 401K loan repayment: $1,148.98.

Thus, Debtors' total net monthly income is $30,978.98.[10]  And Debtors' monthly living expenses are as follows:

- home mortgage: $4,267.82;
- home maintenance: $700;
- electricity, heat and natural gas: $1,100;
- water, sewer and garbage collection: $421;
- phone and cable service: $478.13;
- food and housekeeping supplies: $1,500;
- childcare and private children's education: $4,750.50;

---

[9] ECF No. 1, Pg. 61.
[10] This amount includes the $53.33 earned by Mrs. Fedoruk, who receives an average of $53.33 monthly from her part time employment at St. Anthony's as a substitute teacher.

- clothing & laundry: $350;

- personal care products: $370;

- medical and dental: $775;

- transportation: $880;

- entertainment: $250;

- charitable contributions: $84;

- life insurance: $263.52;

- vehicle insurance: $214.57;

- jewelry/disability insurance: $374.05;

- payments on two 2016 Chevy Suburbans: $2,178.17;

- storage rent: $85;

- installment on pool: $629; and

- miscellaneous: $320.

As a result, Debtors' monthly living expenses come out to a total of $19,810.76, which leaves the Debtors with approximately $4,700.64 in monthly disposable income.

### C. Debtors' Assets & Liabilities

The last day to file any objection to Debtors' exemptions was October 29, 2018. No objections were filed; therefore, Debtors exemptions are allowed.[11] Debtors listed a total of $1,340,688.58 in exempt assets including: a home located at 33910 Thousand Oaks Blvd. in Magnolia, Montgomery County, Texas valued by Debtors at $529,950; a 401(k) valued at $544,750.55; and 529 Educational Savings Plans valued at $109,130.87. Additionally, Debtors

---

[11] ECF NO. 8.

own two 2016 Chevrolet Suburbans valued at $85,950.[12] In total Debtors have also scheduled a total of $472,811 in secured debt and $4,323,858.24 in general unsecured debt, which includes, inter alia, $2,508,000 for an alleged personal guarantee of the Katy ER lease; $350,000 in SBA loans; and $112,934.50 owed to Western Equipment Finance.[13]  While Katy ER disputes Debtors' liabilities, claiming that a majority are personal, the Court finds that the Debtors' liabilities are correctly scheduled as business debts.

### D. Debtors' Family Life

Throughout the multi-day hearings, Debtors testified about their family life.  Debtors have three children living at home, ages 11, 9, and 8.[14]  Two of the children are special needs. Debtors testified how the special needs of the children impacted their family.[15]  To serve the needs of the children, they attend private school, participate in swim club, and have a grandmother serve as a babysitter.

Dr. Fedoruk also testified about how his previous working hours impacted his family life and himself in a negative way.[16]  He testified that the sheer number of hours he was working was no longer feasible.  Mrs. Fedoruk also testified about the number of hours her husband worked. Accordingly, Dr. Fedoruk scaled back on the number of hours he has worked, which has impacted his income for the year to date.[17]

### III.  CONCLUSIONS OF LAW

### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district

---

[12] Id,
[13] ECF No. 1 P. 69.
[14] Min Entry 12/12/18; 2/12/19; 2/26/19 & 3/27/19.
[15] Id.
[16] Id.
[17] Id.

courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[18] This is a core matter as it "concern[s] the administration of the estate."[19]

This Court may only hear a case in which venue is proper.[20] Debtors have resided in the Southern District of Texas for the 180 days immediately preceding the Petition Date. Therefore, venue is proper.

### B. Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.[21] The pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) because whether or not to dismiss this case concerns the administration of this estate. Finally, in the alternative, this Court has the constitutional authority to enter a final order on the Motion to Dismiss because all the parties in this contested matter have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[22] Indeed, Katy ER filed the Motion to Dismiss in this Court,[23] Debtors filed their Response opposing the Motion to Dismiss,[24] and the parties proceeded to make a record in a multi-day hearing without ever objecting to this Court's constitutional authority to enter a final order on the

---

[18] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[19] § 157(b)(2); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).
[20] 28 U.S.C. § 1408.
[21] *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015) (holding that parties may consent to jurisdiction on non-core matters).
[22] *Wellness Int'l Network*, 135 S. Ct. at 1947 ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent....")
[23] ECF No. 42.
[24] ECF No. 50.

Motion.[25] Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.

### C. Whether Debtors' Debts are Primarily Business Debts

As a preliminary matter, the Court, pursuant to its sua sponte powers, finds that Debtors qualify as Chapter 7 business debtors, meaning that the majority of Debtors' indebtedness is non-consumer business debt. Katy ER does not and cannot seek dismissal under § 707(b), as Debtors are non-consumer business debtors as defined by § 101(8). That section states that a debtor's debts are "primarily consumer debts" if they exceed fifty percent of the debtor's total debt.[26] "[T]he test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit." [27] More than fifty percent, of Debtors' scheduled debt involved the business venture with Katy ER. No convincing evidence was presented to the contrary. As such, Debtors qualify as Chapter 7 business debtors, and the only means for seeking a dismissal of Debtors' case is under § 707(a), which is what Katy ER ultimately plead.

### D. Whether, Pursuant to 11 U.S.C. § 707(a), Cause Exists to Dismiss the Instant Chapter 7 Proceeding

Pursuant to 11 U.S.C. § 707(a), the Court "may dismiss a case under this chapter only after notice and a hearing and only for cause, including ...." a brief, illustrative but not exhaustive list. "Courts have broad authority to determine what is cause for dismissal under § 707(a): '[C]ause is any reason cognizable to the equity power and conscience of the court as constituting

---

[25] Min Entry 12/12/18; 2/12/19; 2/26/19 & 3/27/19.
[26] *In re Booth*, 858 F.2d 1051, 1055 (5th Cir.1988).
[27] *Id.*

an abuse of the bankruptcy process.'"[28]  "This can include prepetition bad-faith conduct, post-petition bad-faith conduct, or petitions that simply serve no legitimate bankruptcy purpose."[29] The burden to prove cause rests with the moving party; if the moving party meets the initial burden, it shifts.[30]  And ultimately, the decision to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge.[31]  The court must balance the equities and weigh the benefits and prejudices of a dismissal.[32]

Here, Katy ER bears the burden, as the moving party, for proving cause exists to dismiss Debtors' Chapter 7 proceeding.[33]  Katy ER points to Debtors' income, spending habits, and value of assets, and alleges that Debtors have acted in bad faith by filing the instant bankruptcy.[34] However, this Court is not convinced; in fact, bankruptcy is designed for debtors like Dr. and Mrs. Fedoruk: debtors investing in a business venture that ultimately failed.

Nothing in the record indicates that Debtors acted in bad faith.  First, Katy ER largely ignores the fact that Debtors' are in a Chapter 7 and not a Chapter 13 or Chapter 11 proceeding. What Debtors' post-petition expenses look like are beyond this Court's concern at the present because Katy ER failed to convince this Court that Debtors' debts are mainly consumer. Therefore, the confines of the Means Test and resulting monthly disposable income are simply not applicable to the Debtors in this Chapter 7 proceeding.  Second, Katy ER did not allege nor did it present any evidence of Debtors' acting in bad faith post-petition.  Debtors have

---

[28] *Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 370 (5th Cir. 2016) (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Co. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986) ).
[29] *In re Essential Financial Education, Inc.*, No. 18-33108-BJH, 2019 WL 1750906, at *4 (Bankr.. N.D.Tex. Apr. 16, 2019)
[30] *In re Chovev*, 559 B.R. 339, 343 (Bankr. .E.D.N.Y., 2016) (citing *In re Aiello*, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010)).
[31] *Matter of Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir.1988); *In re Cecil,* 71 B.R. 730 (Bankr.W.D.Va.1987).
[32] *Matter of Atlas Supply Corp.*, 857 F.2d at 1063.
[33] *In re Chovev*, 559 B.R. at 343.
[34] ECF No. 42.

cooperated with the Chapter 7 trustee and the applicable laws and procedures contemplated by the Code. Finally, Katy ER raised allegations that Debtors' pre-petition actions were designed to shield assets from creditors, but this Court is not convinced. As an example of this alleged nefarious conduct, Katy ER points to the installation of a pool and deck at the Debtors' homestead.[35] However, Katy ER seemingly ignores the fact that these additions were made before Debtors even contemplated shelter in bankruptcy, as evidenced by Debtors' credible testimony throughout the hearings.[36] As such, this Court finds that a balancing of the equities does not result in a dismissal of Debtors' Chapter 7 proceeding.[37]

### E. Whether, Pursuant to 11 U.S.C. § 305, This Court Should Abate the Instant Chapter 7 Proceeding.

Alternatively, Katy ER urges that the Court should abstain pursuant to 11 U.S.C. § 305, which provides that:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
> (1) the interests of the creditors and the debtor would be better served by such dismissal or suspension;….

When determining whether abstention is warranted, courts consider the facts of each case and look to several factors.[38] Those factors include: (1) the economy and efficiency of administration; (2) whether another forum is available or proceedings already are pending in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and creditors are able to agree on a less

---

[35] *See* ECF No. 42; Min Entry 12/12/18; 2/12/19; 2/26/19 & 3/27/19.
[36] Min Entry 12/12/18; 2/12/19; 2/26/19 & 3/27/19.
[37] *See Matter of Atlas Supply Corp.*, 857 F.2d at 1063.
[38] *In re Essential Financial Education, Inc.*, 2019 WL 1750906, at *5.

expensive out-of-court arrangement; (6) whether a non-federal insolvency has proceeded so far that it would be costly to start anew in bankruptcy court and (7) the purpose for which bankruptcy jurisdiction has been sought.[39]

1. **Factor 1: The Economy and Efficiency of Administration**

The evidence shows that the bankruptcy court is the most economic and efficient forum to resolve this dispute. Katy ER is not Debtors' only creditor, as evidenced by Debtors' schedules, which have not been disputed.[40] Like every scheduled creditor, Katy ER has and had the chance to participate in the Debtors' Chapter 7. It does not impact the economy and efficiency of the administration of Debtors' estate that Katy ER missed certain opportunities to object. This Court remains a superior forum for the claims and the parties because of the Bankruptcy Code's remedies. Thus, this factor weighs in favor of this Court not abstaining.

2. **Factor 2: Whether Another Forum is Available or There are Already Proceedings Pending in a State Court; and Factor 6: Whether a Non-Federal Insolvency has Proceeded So Far That it Would be Costly to Start Anew in Bankruptcy Court**

Although Dr. Fedoruk previously filed the State Court Case against Katy ER, those claims were resolved via summary judgment, directed verdict, and the Agreement.[41] Additionally, Katy ER presented no evidence that would suggest another forum would be appropriate, especially concerning other unpaid creditors were not parties to the State Court Case and likely cannot be made parties to it. Katy ER is not the only creditor in this case despite its actions. Therefore, these factors weigh in favor of this Court not abstaining.

---

[39] *In re Texas EMC Mgmt., LLC*, Nos. 11–40008–H3–7, 11–40017–H3–7, 2012 WL 627844, at *3 (Bankr. S.D. Tex. Feb. 24, 2012); *In re Essential Financial Education, Inc.*, 2019 WL 1750906, at *6.
[40] ECF No.1.
[41] ECF No. 42; ECF No. 50.

3. **Factors 3-5: Whether Federal Proceedings are Necessary to Reach a Just and Equitable Solution; Whether There is an Alternative Means of Achieving an Equitable Distribution of Assets; and Whether Debtors and Creditors are Able to Work Out a Less Expensive Out-of-Court Arrangement**

Katy ER did nothing to convince the Court that there would be an equitable solution to resolving Debtors' Chapter 7 in an Out-of-Court arrangement that would satisfy Katy ER's claim as well as the claims of other creditors. Once again, the Court repeats itself in saying that Katy ER is not the only creditor in the case.[42] As such, these factors weigh in favor of this Court not abstaining.

4. **Factor 7: The Purpose for Which Bankruptcy Jurisdiction Has Been Sought**

Finally, all evidence presented, including but not limited to, the creditability of Debtors' testimony, convinces this Court that the purpose of seeking the Court's jurisdiction is appropriate. Debtors seek a fresh start of all of their debt including the commercial debt. While the Court does not condone Debtors' financial decisions leading to bankruptcy, the Code and its protections exist to give debtors a fresh start. Dr. and Mrs. Fedoruk seek this fresh start in good faith. Accordingly, this factor weighs in favor of this Court not abstaining. After considering the factors with the broad discretion granted to this Court in weighing the equities, the Court declines Katy ER's invitation to abstain.[43]

## V. CONCLUSION

Debtors' come to this Court seeking a fresh start. Despite Katy ER's allegations of bad faith, this Court finds that Katy ER does not and cannot meet the burden that would determine

---

[42] *See* ECF No. 1.
[43] *In re Texas EMC Mgmt., LLC*, 2012 WL 627844, at *3.; *In re Essential Financial Education, Inc.*, 2019 WL 1750906, at *6.

cause for dismissal exists. As such, pursuant to the authority and discretion granted under the Code and case law, this Court will not dismiss Debtors' Chapter 7 proceeding and Katy ER's Motion to Dismiss is DENIED. Additionally, and in the alternative, Katy ER asks this Court to abstain. After examining the factors that other courts use to determine abstention, this Court finds that no factors weigh in favor of this Court abstaining. Therefore, the request for abstention is also DENIED.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 07/23/2019.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge